# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN
_____

ANDREA ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
TENY R. GERAGOS
ADMITTED IN NY AND CA

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN NY AND NJ

October 4, 2018

By Hand & ECF
Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: United States v. David Shalam, 17 Cr. 330 (AKH)**

Dear Judge Hellerstein:

As your Honor is aware, I represent DAVID SHALAM who is scheduled to be sentenced by this distinguished Court on Friday, October 5, 2018 at 11AM.

Under separate cover, counsel has previously submitted an extensive formal Sentence Memorandum together with two independent psychiatric evaluations and more than 65 Exhibits including more than 60 letters attesting to Mr. Shalam's extraordinary life as a father, family person and active Community leader. These materials we submit help explain why this Defendant should not forfeit the rest of his life in prison despite the very serious nature of the crime he has plead guilty to. While counsel hesitates to further burden the court on the eve of sentence, I feel a brief additional submission is necessary in response to the Government's sentencing letter in which your Honor is urged to impose a Guideline sentence, which in this case, because of the statutory maximum, would involve 30 years imprisonment, a sentence that in the case of Mr. Shalam who is now 52 years old would as a practical matter constitute a sentence of virtually life in prison.

What is very much worth noting and also terribly disappointing is the fact that, while the Government's sentencing letter repeatedly urges a Guideline sentence, there is not a single word said by the Government in its submission about the Defendant's wonderful personal characteristics, nor is there any reference to, or any mention of, the two separate psychiatric evaluations that intelligently explain the defendant's

## BRAFMAN & ASSOCIATES, P.C.

complicated but not entirely worthless life. Furthermore, although the Government references the fact that the Department of Probation agrees with the basic Guideline "calculation," they omit the recommendation of the Probation Officer who recommends the minimum sentence of 15 years and rejects the Draconian effort of the Government to blindly push for a Guideline sentence while ignoring "who" Mr. Shalam is and why a sentence of life in prison is not required nor appropriate. To ignore the independent and quite impressive Probation Report and the recommendation of a seasoned Probation Officer, who recognized the fundamental fairness of a 15-year prison sentence, is unfortunate. Fifteen years in prison is a sentence that counsel and the Probation Department considers sufficient but not greater than necessary to impose serious punishment and promote respect for the law.

Simply put, in its letter to your Honor, the Government has also chosen to ignore the directives of the Supreme Court of the United States that requires a District Court to make an "individualized assessment" (Gall v. United States, 552 U.S. 38, 52 (2007)) of the particular defendant being sentenced. The Government has also elected to ignore the clear and compelling authorities cited by defense counsel which demonstrate beyond dispute that the Guideline sentence urged by the Government in this case relies on a Guidelines provision (§ 2G2.1) that is NOT a provision any Court has ever suggested to have been developed as a result of "empirical" evidence. Indeed, § 2G2.1 has been specifically noted to be a Guidelines provision for which the Commission did NOT use the empirical approach used for virtually every other Guidelines Section. See United States v. Dorvee, 616 F. 3d 174, 184 (2d Cir. 2010).

We respectfully submit that in this case, as to this Defendant, the almost rote application of a Guideline sentence urged by the Government without any consideration whatsoever of any factor besides the nature of the crime would in our judgement fashion a sentence that would constitute a miscarriage of justice if imposed under the facts as to this Defendant.

Counsel was obviously disappointed in the Government's submission, devoid as it is of any response to the compelling materials provided to your Honor on behalf of Mr. Shalam. Indeed, what the Government focused on exclusively is the stipulated Guideline range in the Plea Agreement and the particular distasteful nature of the Defendant's criminal conduct, by including in its submission, a particularly offensive chat exchange between the defendant and the mother who pimped out her own children. The mother, incidentally, received a 9 1/2 year prison sentence, as did another individual in this case who like the defendant committed the very same crime and yet, unlike Mr. Shalam, did not spend the vast majority of their lives involved in the many acts of kindness attributed to Mr. Shalam which the Government completely ignored. To ignore the sentence parity issues we raise at pages 51-54 of our Memorandum demonstrates that the government did not have a good, legally appropriate response to our position, so instead, repeatedly argued the serious nature of the offense and ignored this very important issue.

2

BRAFMAN & ASSOCIATES, P.C.

In a personal aside, I wish to note that when initially approached by members of the Defendant's family, (the Defendant was remanded), I urged them to go elsewhere. Indeed, I offered to find them an experienced criminal defense counsel who I had every reason to believe would have done a very good job. To be perfectly frank with a Court I have genuine affection and respect for, I knew after reading the Complaint that this case would have a sad ending, recognizing the difficulty of mounting any viable defense and also quite familiar with the "mandatory" minimum sentences often required in these cases. To be perfectly frank however, I never imagined how inflexible the Government would be and honestly hoped that I could convince the Southern District to accept a plea that did not require a mandatory minimum 15-year sentence.

Despite my efforts to send the family elsewhere, I received substantial pressure from the Defendant's community, including direct appeals from several prominent Rabbinic figures close to Mr. Shalam, who urged me to take this case, as did members of his extended family. Then, at the urging of his very concerned immediate family, I agreed to meet with Mr. Shalam at the MDC. After meeting him, I realized that I could not send him elsewhere but had to try my personal very best to save him, if at all possible. Indeed, despite the horrific despondency I was confronted with when I met with him and despite the sterile, confining and sometimes even intimidating confines of the MDC, I found David Shalam to be a soft spoken, unfailingly polite, learned and rather simple, very kind, fundamentally decent man who had done something terrible and was consumed with honest, sincere and at times overwhelming grief and genuine remorse.

Shortly after meeting him and explaining his dire legal position, Mr. Shalam and I agreed to meet with the prosecutor and investigating agent in this case in an effort to cooperate in what we then assumed was a continuing investigation. At a terribly painful and humiliating conference at the Southern District, Mr. Shalam admitted to his crimes, truthfully answered all of the terribly embarrassing questions posed and tried his best to offer helpful information, including providing the agent with all of the passwords needed to access the Skype sites in which the incriminating chats were posted. Unfortunately, the Government did not need the information provided by Mr. Shalam and in the terrible irony that often applies in the case of a first offender, he did not earn the kind of help or plea concession that is generally provided to career criminals who because of their lifetime of criminal conduct, can earn lower sentences that first time offenders with somewhat limited criminal conduct are often unable to achieve.

Thereafter, as further evidence of the Defendant's remorse and his desire to also accept responsibility for his conduct, Mr. Shalam agreed to proceed via Information, sparing the government the cost and effort of presenting this case to a Grand Jury. Subsequently, counsel met with the line Assistant, Allison Moe, trying very hard to convince her to accept a plea to a crime that did not include a mandatory minimum 15-year sentence, with the understanding that regardless of the mandatory minimum of the actual plea, the Government could always argue for a higher Guideline sentence. After failing to convince Ms. Moe, we requested an opportunity to meet with the SDNY Mitigation Committee, to whom we also provided a written submission. Like Ms. Moe,

# BRAFMAN & ASSOCIATES, P.C.

however, the three-member Committee was also inflexible. Subsequently, I requested and received a meeting with Liza Zornberg, then Chief of the Criminal Division. She too, however was not at all sympathetic. Indeed, while I was granted the meeting, it was painfully apparent at the meeting that, although I was granted the professional courtesy of a meeting, the Office was not going to allow any plea other than a plea to a 15-year mandatory minimum, even though a plea with either a mandatory 5- or 10-year minimum sentence would still allow the Government to argue for a Guideline sentence. Shortly after my meeting with Ms. Zornberg, I was told that the decision of the office was final and was also told that there would be no additional meetings on this case to prevent me from asking for a meeting with the United States Attorney himself.

In any event, here we now are, with the day of sentence approaching and the very "best" sentence I can hope for is 15 years imprisonment for a man with so many redeeming qualities and so much to live for outside of a prison that he and his family will never get to experience together. Although I feel as if I failed this Defendant, G-D knows that I tried. In fact, I even considered asking for a non-jury trial in the hope of perhaps convincing this Court, if acting as a trier of fact, that there was a "doubt" as to whether the defendant really did engage in "production." Unfortunately, the law on this issue is not good for the defendant and in any event just like Congress has taken away much of your Honor's discretion by imposing a Draconian mandatory minimum sentence that the Government gets to control, the Southern District has also taken away the right of any defendant to ever have his or her case decided by a Court by never consenting to a non-jury trial, a policy that must be as equally offensive to the Judges of this District as it is to counsel.

Finally, let me share one final concern that I hope is accepted by the United States Attorney for the Southern District of New York with the respect and honest soul searching in which it is offered by an attorney who for 40 years has practiced with great personal integrity and a high level of professionalism. Thus, several years ago, then United States Attorney Preet Bahrara invited me to address all of the prosecutors assigned to the Criminal Division on the "Role of Criminal Defense Counsel." The hope was to convince young prosecutors in his office that I was not the enemy but an "adversary" who helped keep the system working properly. In retrospect, perhaps it would have been more helpful for me to have spoken about the "Role of the Prosecutor."

In this case, I feel that the Government missed an opportunity to demonstrate to your Honor its obligation to not merely rubber stamp its position on sentence, but to actually demonstrate at least some agony in arriving at the Government's position in this difficult matter. Then, even if the position remained the same, at least we would all know

## BRAFMAN & ASSOCIATES, P.C.

that there was genuine consideration given to "who" David Shalam is, the man whom the Government suggests has essentially forfeited any hope of ever enjoying life with his family outside the walls of a federal prison.

Respectfully,

Benjamin Brafman, Esq.

cc: AUSA Alison Moe (Via ECF)